AO 241 (Rev. 5/85)

PETITION UNDER 28 USC § 2254 FOR WRIT OF
HABEAS CORPUS BY A PERSON IN STATE CUSTODY

## United States District Court

| District |
|---|

| Name | Prisoner No. | Case No. |
|---|---|---|
| James Mackey | E-76532 | |

Place of Confinement

Mule Creek State Prison

| Name of Petitioner (include name under which convicted) | Name of Respondent (authorized person having custody of petitioner) |
|---|---|
| James Mackey | v. Richard Subia, Warden |

The Attorney General of the State of:

## PETITION

1. Name and location of court which entered the judgment of conviction under attack  San Joaquin County Superior Court

2. Date of judgment of conviction  11/07/89

3. Length of sentence  25 years to life

4. Nature of offense involved (all counts)  First Degree Murder, P.C. 187

5. What was your plea? (Check one)
   (a) Not guilty ☐
   (b) Guilty ☐
   (c) Nolo contendere ✓

   If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment, give details:

6. If you pleaded not guilty, what kind of trial did you have? (Check one)
   (a) Jury ☐
   (b) Judge only ☐

7. Did you testify at the trial?
   Yes ☐   No ☐

8. Did you appeal from the judgment of conviction?
   Yes ☐   No ✓

(2)

9. If you did appeal, answer the following:

    (a) Name of court

    (b) Result

    (c) Date of result and citation, if known

    (d) Grounds raised

    (e) If you sought further review of the decision on appeal by a higher state court, please answer the following:

        (1) Name of court

        (2) Result

        (3) Date of result and citation, if known

        (4) Grounds raised

    (f) If you filed a petition for certiorari in the United States Supreme Court, please answer the following with respect to each direct appeal:

        (1) Name of court

        (2) Result

        (3) Date of result and citation, if known

        (4) Grounds raised

10. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions with respect to this judgment in any court, state or federal?
Yes ☑ No ☐

11. If your answer to 10 was "yes," give the following information:

    (a) (1) Name of court   *San Joaquin County Superior Court*

        (2) Nature of proceeding   *Habeas Corpus*

        (3) Grounds raised   *Please see attachment for all grounds raised.*

AO 241 (Rev. 5/85)

_____

_____

_____

_____

(4) Did you receive an evidentiary hearing on your petition, application or motion?
    Yes ___  No ✓

(5) Result    Denied.

(6) Date of result    March 8, 2006

(b)  As to any second petition, application or motion give the same information:

(1) Name of court    California Supreme Court

(2) Nature of proceeding    Habeas Corpus

(3) Grounds raised    Please see attachment

_____

_____

_____

(4) Did you receive an evidentiary hearing on your petition, application or motion?
    Yes ___  No ✓

(5) Result    Denied

(6) Date of result    December 13, 2006

(c)  Did you appeal to the highest state court having jurisdiction the result of action taken on any petition, application or motion?

(1) First petition, etc.    Yes ✓  No ☐

(2) Second petition,        Yes ☐  No ☐

(d)  If you did *not* appeal from the adverse action on any petition, application or motion, explain briefly why you did not:

_____

_____

_____

12.  State *concisely* every ground on which you claim that you are being held unlawfully. Summarize *briefly* the *facts* supporting each ground. If necessary, you may attach pages stating additional grounds and *facts* supporting same.
     <u>CAUTION: In order to proceed in the federal court, you must ordinarily first exhaust your available state court remedies as to each ground on which you request action by the federal court. If you fail to set forth all grounds in this petition, you may be barred from presenting additional grounds at a later date.</u>

(4)

AO 241 (Rev. 5/85)

    For your information, the following is a list of the most frequently raised grounds for relief in habeas corpus proceedings. Each statement preceded by a letter constitutes a separate ground for possible relief. You may raise any grounds which you may have other than those listed if you have exhausted your state court remedies with respect to them. However, *you should raise in this petition all available grounds* (relating to this conviction) on which you base your allegations that you are being held in custody unlawfully.

    Do not check any of these listed grounds. If you select one or more of these grounds for relief, you must allege facts. The petition will be returned to you if you merely check (a) through (j) or any one of these grounds.

(a) Conviction obtained by plea of guilty which was unlawfully induced or not made voluntarily with understanding of the nature of the charge and the consequences of the plea.

(b) Conviction obtained by use of coerced confession.

(c) Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure.

(d) Conviction obtained by use of evidence obtained pursuant to an unlawful arrest.

(e) Conviction obtained by a violation of the privilege against self-incrimination.

(f) Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant.

(g) Conviction obtained by a violation of the protection against double jeopardy.

(h) Conviction obtained by action of a grand or petit jury which was unconstitutionally selected and impaneled.

(I) Denial of effective assistance of counsel.

(j) Denial of right of appeal.

A. Ground one: Please see attachment

 

Supporting FACTS (state *briefly* without citing cases or law)

 

B. Ground two:

 

Supporting FACTS (state *briefly* without citing cases or law):

(5)

AO 241 (Rev. 5/85)

C.   Ground three: _____

_____

Supporting FACTS (state *briefly* without citing cases or law): _____

_____

_____

_____

_____

_____

_____

D.   Ground four: _____

_____

Supporting FACTS (state *briefly* without citing cases or law): _____

_____

_____

_____

_____

_____

_____

13.  If any of the grounds listed in 12A, B, C, and D were not previously presented in any other court, state or federal, state *briefly*
     what grounds were not so presented, and give your reasons for not presenting them: _____

_____

_____

_____

14.  Do you have any petition or appeal now pending in any court, either state or federal, as to the judgment under attack?
     Yes ___   No ✓

15.  Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked
     herein:
     (a) At preliminary hearing _____

_____

     (b) At arraignment and plea  Hamilton L. Hintz, 301 Court
     Plaza Bldg. 901 H Street, Sacramento, CA 95814

AO 241 (Rev. 5/85)

(c) At trial _____

(d) At sentencing   Hamilton Hintz _____

(e) On appeal _____

(f) In any post-conviction proceeding   Benjamin Ramos  7405 Greenback
Lane #287 Citrus Heights, CA 95610

(g) On appeal from any adverse ruling in a post-conviction proceeding _____

16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at the same time?
Yes ⎯ No ✓

17. Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?
Yes ⎯ No ✓
   (a) If so, give name and location of court which imposed sentence to be served in the future: _____

   (b) Give date and length of the above sentence: _____

   (c) Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?
   Yes ⎯ No ✓

Wherefore, petitioner prays that the Court grant petitioner relief to which he may be entitled in this proceeding.

_____
Signature of Attorney (if any)

I declare under penalty of perjury that the foregoing is true and correct. Executed

01/08/07
   (date)

_____
Signature of Petitioner

(7)

1   BENJAMIN RAMOS, State Bar No.:156643
    LAW OFFICE OF BENJAMIN RAMOS
2   7405 Greenback Lane #287
    Citrus Heights, CA  95610
3   Telephone: (916) 967-2927

4

5   Attorney for Petitioner
    JAMES MACKEY, E-76532
6   Mule Creek State Prison
7   P.O. BOX 409040
    Ione, CA  95640
8

9

10                  IN THE SUPREME COURT

11                  STATE OF CALIFORNIA

12                                  S143015

13  In re JAMES MACKEY, E-76532          Case No.:

14

15      Petitioner,                      PETITION FOR WRIT OF
                                         HABEAS CORPUS;
                                         MEMORANDUM OF POINTS
16                                       AND AUTHORITIES IN
                                         SUPPORT THEREOF
17  On Habeas Corpus.

18

19

20

21

22

23

24

25

# I. INTRODUCTION

1.    On June 1, 1989, Petitioner, James Mackey was placed under arrest for the murder of Laurence Carnegie. (**Exhibit A.**)[1]

2.    On October 16, 1989, Information number 45624 was filed in the Municipal Court of San Joaquin County, Lodi Judicial Branch, charging petitioner, James Mackey, with first degree murder. (**Exhibits A, B.**)

3.    The facts of petitioner's case are set forth at pages one through twelve of the Probation Officer's Report. (**Exhibit A.**)

4.    On August 30, 1989, Petitioner signed a contract and written plea agreement with the San Joaquin County District's Attorney's office.  On November 7, 1989, Petitioner pled no contest to the charge of first-degree murder and gave up his constitutional rights in exchange for the District Attorney's promise to write a letter "personally" to the Parole Board and "recommend [petitioner's] release at the earliest possible time." (**Exhibit C.**)

5.    The contract and written plea agreement expressly stated that petitioner would be required to give truthful testimony relative to the murder of Laurence Carnegie and persons responsible. In exchange for petitioner's full cooperation, the District Attorney agreed personally to write a letter to the Board of Prison Terms (now called Board of Parole Hearings) and or the California Department of Corrections recommending that petitioner be released at the earliest possible time upon having served the minimum sentence of first-degree murder. (**Exhibit C.**)

---

[1] All exhibits referred to in this petition and the accompanying memorandum and all exhibits attached hereto are incorporated herein by reference. In Re Rosenkrantz, (2002) 29 Cal.4th 616 citing In re Serrano, (1995) 10 Cal.4th 447, 456; In re Fields, (1990) 51 Cal.3d 1063, 1070, fn.

6. During negotiations with the District Attorney regarding the above-alleged plea agreement, petitioner alleges he received numerous assurances from his attorney, Mr. Hamilton Hintz, that petitioner would be released from prison after serving 16 years eight months if he accepted the plea agreement and fulfilled its terms by cooperating with the District Attorney's office. Mr. Hintz informed petitioner unequivocally that if petitioner accepted the plea agreement, cooperated with the District Attorney's office, and was a model prisoner, petitioner would be granted parole at his first parole hearing. Based on these representations from Mr. Hintz, petitioner accepted the plea agreement and fulfilled its terms.

7. Petitioner alleges that Mr. Hintz' assurances were based on the mistaken assumption that a parole recommendation from the District Attorney's office would carry enough weight to ensure that petitioner received parole at his initial parole hearing. This assumption by both Mr. Hintz and petitioner was incorrect. The District Attorney's written recommendation carried no weight at petitioner's first parole hearing, and petitioner was denied parole for a period of four (4) out of five (5) possible years. Based on this mistaken assumption, petitioner requests that the court grant rescission under *Civil Code* section 1689 or, alternatively, specific performance.

8. During plea negotiations with Mr. Phillips, the San Joaquin County District Attorney, Mr. Phillips informed petitioner that his office worked closely with the Board of Prison Terms, and a letter from the District Attorney's office would carry "great weight" with the Board. Mr. Phillips implied that his letter to the parole Board would result in petitioner receiving parole at his first parole hearing after having served the minimum prison term. Petitioner's attorney, Mr. Hintz, assured him that the written recommendation from the District Attorney's office was a rare opportunity and that petitioner should accept the deal offered by the District Attorney. Petitioner understood

1  these express and implied assurances from his attorney and Mr. Phillips as

2  "guarantees" that his cooperation under the plea agreement coupled with the District

3  Attorney's personal recommendation would result in his being granted parole at his

4  first parole hearing and released from prison.  Petitioner further understood that it was

5  the intent of both the District Attorney and Mr. Hintz that petitioner would receive

6  parole at his first parole hearing in exchange for his cooperation. No representation,

7  implication or suggestion was made by Mr. Phillips or Mr. Hintz during plea

8  negotiations that petitioner might not receive parole at his first parole hearing and,

9  instead of being released on parole, would be required to remain incarcerated for

10  decades beyond his minimum eligible release date. Based on the failure of this

11  consideration, petitioner requests rescission under *Civil Code* section 1689.

12       9.     Petitioner's objective expectation at the time he entered the contract and

13  plea agreement with the District Attorney's office was that he would be granted parole

14  at his first parole hearing and subsequently released from prison. Based upon the

15  express and implied assurances from Mr. Hintz and Mr. Phillips alleged above,

16  petitioner waived his constitutional rights, accepted the plea agreement, entered a

17  contract with the San Joaquin County District Attorney's office and cooperated fully

18  with the District Attorney's office in the prosecution of Michael Blatt, who had been

19  charged in connection with the murder of Laurence Carnegie.

20       10.    Petitioner has cooperated extensively with the District Attorney's office,

21  testifying in both criminal prosecutions against Michael Blatt, and has completely

22  fulfilled his obligations under the contract and plea agreement. (**Exhibit D.**) Had

23  petitioner been aware at the time he entered his plea that the District Attorney's

24  personal recommendation would not be binding on the Board and would not have the

25

Petition for Writ of Habeas Corpus of James Mackey, Page 4 of 31

1  weight represented by Mr. Phillips and Mr. Hintz, he would not have entered the

2  contract and plea agreement.

3      11.    Petitioner alleges that his prior attorney who represented him during the

4  above-alleged plea negotiations, Mr. Hamilton Hintz, testified in both criminal

5  prosecutions against Michael Blatt regarding his representation of petitioner and the

6  nature of petitioner's contract and plea agreement with the District Attorney's office.

7  Petitioner has attempted to obtain copies of Mr. Hintz' testimony in both Blatt trials but

8  has been unsuccessful. Petitioner alleges that an evidentiary hearing may be necessary

9  to obtain testimony from Mr. Hintz and District Attorney John Phillips in regard to the

10  content of petitioner's plea negotiations.

11      12.    Petitioner's minimum eligible parole date as determined by the contract

12  and written plea agreement was sixteen years and eight months. (**Exhibit C, pg.2.**)

13      13.    On 11/20/90, petitioner, James Mackey E-76532, was received by the

14  Department of Corrections to begin serving a prison term of 25 years to-life in the

15  California Department of Corrections.  (**Exhibits K, L.**)

16      14.    Petitioner raises no challenges herein to the judgment of conviction

17  referenced above. Petitioner raises only contract claims and requests rescission or

18  specific performance as set forth herein.

19      15.    On May 6, 2005, petitioner attended his initial parole consideration

20  hearing before the Board of Parole Hearings at Mule Creek State Prison in Ione,

21  California. The Board was provided with a copy of the written contract and plea

22  agreement and had or should have had knowledge of the terms thereof before

23  conducting the hearing.  (**See Exhibit E, Transcript pgs. 13-16, 76-77, 90-92, and 96-97.**)

24  After consideration of the facts of the case, pre-commitment factors, post-commitment

25  factors, parole plans, the closing statements of counsel and adverse statements by the

victim's family and the District Attorney's representative, the panel denied parole to petitioner for four years. (**Exhibit E, pgs. 124-136.**) Based on the failure of this consideration, petitioner requests rescission under *Civil Code* section 1689. Petitioner alleges that because he was not granted parole at his initial parole consideration hearing, he has been required to serve more than the "minimum" sentence and, therefore, the consideration for the above alleged contract and plea agreement has failed.

16.     Petitioner alleges the San Joaquin County District Attorney's representative violated the contract and written plea agreement by claiming to remain "neutral" yet making adverse statements during petitioner's parole suitability hearing. Specifically, the written contract and plea agreement expressly stated that District Attorney John Phillips would *personally* recommend to the Board of Prison Terms and/or the California Department of Corrections that petitioner be "**released at the earliest possible time**" upon having served the "**minimum sentence**" for first-degree murder. The District Attorney's representative, however, Mr. Eual Blansett, failed to abide by the promise of District Attorney John Phillips: He impeached petitioner's hearing testimony, thereby impliedly advocating *against* petitioner's parole, and he also informed the Board that it was in no way bound to honor petitioner's written plea agreement for early release (**Exhibit E, Transcript pgs. 92-97.**) thereby substantially detracting from the weight and influence of the District Attorney's personal recommendation for early release. Had petitioner known that the District Attorney's office would send a representative to petitioner's initial parole hearing who would attempt to impeach petitioner's hearing testimony and convince the Board that it was not bound to honor petitioner's plea agreement with the District Attorney's office, nor the District Attorney's recommendation that petitioner receive "early release," he would not have entered the agreement or pled to the charges. For these reasons,

petitioner alleges the San Joaquin County District Attorney's office breached the written contract and plea agreement, and that the essential consideration for the contract failed. (**Exhibit E, Transcript pgs. 92-97.**) Based on the failure of this consideration, petitioner requests rescission under *Civil Code* Section 1689.

17.     On February 6, 2006, petitioner filed a habeas corpus petition in the San Joaquin County Superior Court raising legal claims in connection with his above-alleged plea bargain. The court denied the petition on March 8, 2006. (**Exhibit N**)

## II. PARTIES

18.     Petitioner, James Mackey E-76532 is a prisoner of the State of California incarcerated at Mule Creek State Prison in Ione.

19.     Respondent is the San Joaquin County District Attorney's office.

20.     Petitioner alleges the San Joaquin District Attorney's office breached the written contract and plea agreement alleged above in violation of petitioner's state and federal due process rights.

## III.  PRAYER FOR RELIEF

Petitioner is without remedy save this Petition for Writ of Habeas Corpus and requests the following relief either in whole or part as the Court deems appropriate.

WHEREFORE, petitioner prays that the Court:

(1)     Declare the rights of the parties;

(2)     Grant rescission or specific performance of the contract, ordering petitioner's immediate release from prison based on time served;

(3)     Subpoena Mr. John Phillips and Mr. Hamilton Hintz for an evidentiary hearing, if necessary;

(4)     Any other relief the Court deems just and proper.

Dated: __4 — 24__, 2006          By: _____

                                        Benjamin Ramos, Attorney for
                                        Petitioner, James Mackey

Petition for Writ of Habeas Corpus of James Mackey,  Page 7 of 31

# IV.

## STATEMENT OF FACTS

On February 28, 1989, Laurence Carnegie was murdered in San Joaquin County. After an investigation, Petitioner and a co-defendant were arrested. It was the belief of the San Joaquin County District Attorney that another person was the contractor for this murder. However, there was not sufficient evidence to support that belief. (**Exhibit D.**)

Petitioner was offered a written contract and plea agreement, which was accepted on August 30, 1989. The Court also accepted the written contract and plea agreement. Petitioner would have proceeded to trial if this plea agreement had not been offered. The contract and plea agreement in no uncertain terms provides that petitioner:

> [G]ive truthful testimony relative to the murder of Laurence Carnegie and as to the persons responsible, in exchange for the opportunity to enter a plea of guilty or no contest to murder in the first degree without enhancements or special circumstances.

The agreement further provided that:

> District Attorney, John Phillips, shall personally write a letter to the Board of Prison Terms and/or the Department of Corrections recommending that petitioner be released at the earliest possible time upon having served the minimum sentence for first degree murder. (**Exhibit C.**)

The District Attorney's obligations were clear: District Attorney John Phillips agreed personally to recommend that petitioner be released from prison after serving sixteen years and eight months, making petitioner's minimum eligible parole date January 29th of 2006. The Board's then executive officer, Mr. Patterson, also

acknowledged this contract and plea agreement that was signed by the District
Attorney and signed by petitioner and his counsel.

On November 20, 1989, petitioner was sentenced to the California Department of
Corrections for the term of twenty-five to life.  (**Exhibit D**)

Petitioner has cooperated with the San Joaquin County Sheriff's Department and
the District Attorney's Office in connection with the prosecution of *People v. Michael
Blatt*, San Joaquin County Superior Court Information Number 46070, which resulted in
two jury trials.  Because of Petitioner's agreement to cooperate with law enforcement
and prosecutors in exchange for a plea to first degree murder without enhancements or
special circumstances and a recommendation for parole at the earliest possible time, the
District Attorney's office was able to prosecute the person they believe to be morally
and legally responsible for the murder. Thus, petitioner honored the terms of the
written contract and plea agreement. (**See Exhibit D, pg. 2.**)

On May 6, 2005, petitioner attended his initial parole suitability hearing at Mule
Creek State prison in Ione.  Under the terms of the contract and written plea agreement,
the District Attorney was to recommend parole at the earliest possible time. (**See
Exhibit C.**)  The Board was provided with a copy of the written contract and plea
agreement and had or should have had knowledge of the terms before conducting the
hearing.  (**See Exhibit E, Transcript pgs. 13-16, 76-77, 90-92, and 96-97.**)

A letter dated November 1990, was sent to the Department of Corrections by
District Attorney John Phillips in an effort to satisfy the contract. (**See Exhibit D.**)
However, the District Attorney's office sent a representative to the parole suitability
hearing, Mr. Eual Blansett. Mr. Blansett effectively neutralized the support letter sent by
District Attorney Phillips by impeaching petitioner and making statements against
petitioner's interest in receiving parole, contrary to the terms of the plea agreement.
Rather than "recommending an early release" or even remaining neutral, the District

Attorney's representative became an advocate against the Petitioner during his hearing. Initially, the District Attorney's representative stated:

> I cannot and will not do anything to undermine the letter that was sent to the Board. (**Exhibit E, Transcript pgs. 15-16.**) [m]y job here is merely to be a representative of the District Attorney's office. (**Exhibit E, Transcript pg. 79.**)

Later the District Attorney's representative abandoned his role as a "mere representative" and became an advocate against the Petitioner.

> Mr. Commissioner, if I may just for a moment, I'm not going to make any statement whatsoever contrary to the negotiations that were reached between Mr. Hintz and Mr. Phillips, but there are some misrepresentation… One is that *this was not a contract that was meant to bind in any way any commission regarding how they saw Mr. Mackey.* (**Exhibit E pg. 92-93.**)

This clarification by Mr. Blansett is directly contrary to petitioner's understanding of the contract and the expressed intent of District Attorney John Phillips, as understood by petitioner. Moreover, it is puzzling how Mr. Blansett can represent the District Attorney's state of mind when Mr. Blansett was not a party to the contract. (**Exhibit C; Exhibit E at 79**)

The representations made during plea negotiations by District Attorney Phillips were that the letter would have enough weight to sway the parole board to grant parole at the earliest opportunity. Petitioner was left with no doubt concerning the Board's response to the District Attorney's letter: Parole would be granted. Petitioner did not bargain for a non-binding, "advisory" recommendation that he *hoped* would be followed. Petitioner understood and relied upon the express and implied

representations that the District Attorney's letter would secure his "early release" upon parole after having served the minimum term.

The District Attorney's representative also gave a closing argument making many assertions adverse to Petitioner.

> Mr. Mackey did not turn himself in to authorities in the sense that he found out they were investigating him, and therefore, turned himself in. He was brought in for questioning. He made a statement, initial statement that implicated himself in the murder… Mr. Mackey then agreed to cooperate with law enforcement. And having a wire attached to his body, he went in to Mr. Blatt's office with the idea that he was going to get Mr. Blatt to implicate himself in the murder. But what Mr. Mackey did, unfortunately, was to alert Mr. Blatt to the fact that he was wired…He gave me a full statement of the entire case. Mr. Mackey's statement to me was that he went back to the trunk. That he took the rope, and that he aided in the strangulation of Larry Carnegie… But again, that's not in any way to go back on the deal that Mr. Phillips made.

Had petitioner known that the District Attorney's office would send a representative to petitioner's initial parole hearing who would attempt to impeach petitioner's hearing testimony and convince the Board that it was <u>not bound to honor petitioner's plea agreement for early release,</u> <u>nor the District Attorney's recommendation</u> for the same, he would not entered the agreement or pled to the charges.

# V.
## VERIFICATION

I, James Mackey E-76532, declare:

I am the petitioner in this action. I have read the foregoing petition for a writ of habeas corpus and the facts stated therein are true of my own knowledge, except as to matters that are therein stated on information and belief, and as to those matters I believe them to be true.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed at, _____IoNE_____ California on _April 18_, 2006.


Petitioner, James Mackey
CDC# E-76532

## MEMORANDUM OF POINTS AND AUTHORITIES

### A.

### RELEASE ON PAROLE WAS A TERM BARGAINED FOR BY PETITIONER AND DENIED BY THE BOARD; THEREFORE, SPECIFIC PERFORMANCE IS THE APPROPRIATE REMEDY.

The California Supreme Court follows precedent set by the U.S. Supreme Court in *Santobello v. New York*, 404 U.S. 257 (1971) regarding plea agreements.  The California Supreme Court observed:

> In vacating the judgment rendered by the trial court, the Supreme Court held in *Santobello* that the plea-negotiating process "must be attended by safeguards to insure the defendant what is reasonably due in the circumstances. Those circumstances will vary, but a constant factor is that when a plea rests in any significant degree *on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled.* [¶] On this record, *petitioner 'bargained' and negotiated for a particular plea in order to secure dismissal of more serious charges, but also on condition that no sentence recommendation would be made by the prosecutor.* It is now conceded that the promise to abstain from a recommendation was made, and at this stage the prosecution is not in a good position to argue that its inadvertent breach of agreement is immaterial.... That the breach of agreement was inadvertent does not lessen its impact." (*Santobello v. New York, supra*, 404 U.S. at p. 262 [30 L.Ed.2d at p. 433], italics added.)

*In re Moser*, 6 Cal.4th 342 (1993) at 355.

The U.S. Supreme Court additionally held in *Santobello* that a criminal defendant has a due process right to enforce the terms of his plea agreement. *See also Brown v.*

1  *Poole*, 337 F.3d 1155, 1159 (9th Cir. 2003) ("[The defendant's] due process rights

2  conferred by the federal constitution allow [him] to enforce the terms of the plea

3  agreement."). The construction and interpretation of state court plea agreements "and

4  the concomitant obligations flowing therefrom are, within broad bounds of

5  reasonableness, matters of state law." *Ricketts v. Adamson*, 483 U.S. 1, 6 n.3 (1987). In

6  California, "[a] negotiated plea agreement is a form of contract, and it is interpreted

7  according to general contract principles," *People v. Shelton*, 37 Cal. 4th 759, 767 (2006),

8  and "according to the same rules as other contracts," *People v. Toscano*, 124 Cal. App. 4th

9  340, 344 (2004) (cited with approval in *Shelton* along with other California cases to same

10  effect dating back to 1982). Thus, under *Adamson*, California courts are required to

11  construe and interpret plea agreements in accordance with state contract law.

12    In California, "[a]ll contracts, whether public or private, are to be interpreted by

13  the same rules . . . ." Cal. *Civil Code* §1635; *see also Shelton*, 37 Cal. 4th at 766-67; *Toscano*,

14  124 Cal. App. 4th at 344. A court must first look to the plain meaning of the agreement's

15  language. Cal. *Civil Code* §§ 1638, 1644. If the language in the contract is ambiguous, "it

16  must be interpreted in the sense in which the promisor believed, at the time of making

17  it, that the promisee understood it." Cal. *Civil Code* § 1649. The inquiry considers not the

18  subjective belief of the promisor but, rather, the "objectively reasonable" expectation of

19  the promisee. *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1265 (1992); *Badie v.*

20  *Bank of Am.*, 67 Cal. App. 4th 779, 802 n.9 (1998) ("Although the intent of the parties

21  determines the meaning of the contract, the relevant intent is objective—that is, the

22  objective intent as evidenced by the words of the instrument, not a party's subjective

23  intent." (internal quotation marks and citation omitted)). Courts look to the "objective

24  manifestations of the parties' intent . . . ." *Shelton*, 37 Cal. 4th at 767. If after this second

25  inquiry the ambiguity remains, "the language of a contract should be interpreted most

strongly against the party who caused the uncertainty to exist." Cal *Civil Code* § 1654; *see also Toscano*, 124 Cal. App. 4th at 345 ("ambiguities [in a plea agreement] are construed in favor of the defendant"). (2000).  However, broken plea agreements do not require a showing of predudice:

> [I]n the context of a **broken plea agreement**, there is more at stake than the liberty of the defendant or the length of his term. "At stake is the honor of the government[,] public confidence in the fair administration of justice, and the efficient administration of justice ...." ' [Citations.]"

*In re Moser*, 6 Cal.4th 342 (1993) at 354, *citing, People v. Walker*, 54 Cal.3d 1013; 1 Cal.Rptr.2d 902 (1991). (emphasis added).

Petitioner alleges that his release on parole was a critical "inducement" and *part of the plea agreement*. Although the contract indicated that , "[T]he actual release date will be determined by the Board of PrisonTerms or its equivalent agency" (**Exhibit C**), petitioner alleges it was understood and intended by the District Attorney that his written recommendation would have sufficient weight to persuade the Board to grant parole to petitioner at his first parole hearing and that the "actual release date" would not necessarily be 16 years 8 months exactly, but as determined by the Board *after* granting parole.  In other words, petitioner alleges there was no doubt on the part of the District Attorney, petitioner's attorney or petitioner whether petitioner would be granted parole with the support of the District Attorney's recommendation; the only actual question was when petitioner's release would be scheduled, i.e., how close to his minimum term of 16 years 8 months would petitioner be released? Thus, the essential "inducement" offered by the District Attorney's office was the expectation that the District Attorney's written support and recommendation for petitioner's early release would be effective. As the *Santobello* court declared: "[W]hen a plea rests *in any significant degree* on a promise or agreement of the prosecutor, so that it can be said to

1  be *part of the inducement* or consideration, such promise *must be fulfilled.*" *Santobello,*

2  *supra.* The prosecutor's promise, however, that his letter would carry "great weight"

3  and secure petitioner's parole has not been fulfilled. Because the crucial, bargained-for

4  consideration failed, petitioner should be granted specific performance or, alternatively

5  the contract should be rescinded and petitioner sentenced to time served, as he has now

6  served more than the minimum term.

7  Petitioner submits the reasoning of *In re Moser*, 6 Cal.4th 342 (1993) is on point:

8
9
10
11
12
13
14
15
16
17

> [A]t oral argument, petitioner's counsel argued
> that, even if the present record fails to indicate that
> the term of parole constituted an element of the
> parties' plea agreement, petitioner's potential parole
> term may have been discussed during plea
> negotiations, and **the prosecutor may have made
> promises or inducements regarding the term of
> parole.** Counsel further argued that it would be
> unfair simply to assume that no such discussions
> occurred, when the People's argument in the superior
> court appeared to concede that the three-year term of
> parole was part of the parties' plea agreement, and
> petitioner never was put on notice as to the necessity
> of introducing evidence directed to this issue.

18
19
20
21
22
23
24
25

> Counsel's argument is well taken. "In most
> cases an examination of the record will reveal the
> truth or falsity of the petitioner's allegations, thus
> obviating the need for an evidentiary hearing." (*People
> v. West*, (1970) 3 Cal.3d 595, 611 [91 Cal.Rptr. 385].) In
> light of the nature of the People's argument in the
> superior court in response to the order to show cause,
> however, we believe it would be inappropriate to
> foreclose petitioner from presenting evidence relating
> to whether the length of petitioner's term of parole
> was an element of the plea negotiations. Under the
> unusual circumstances presented by this case, we
> conclude this question should be the subject of further

proceedings on remand to the superior court. (*See Santobello v. New York, supra*, 404 U.S. 257, 262 [30 L.Ed.2d 427, 433].)

*In re Moser*, 6 Cal.4th 342 (1993) at 357-58.

Petitioner has alleged repeatedly that he was assured by his attorney that the District Attorney's recommendation would result in his receiving parole at his first parole hearing. Additionally, Mr. Phillips, the District Attorney, also informed petitioner that his letter would have "great weight" with the Board, implying that his support would be adequate to persuade the Board to grant parole. It was clear to petitioner that he was being told by both his attorney and the District Attorney, Mr. Phillips, that he would be granted parole at his first parole hearing on the strength of the District Attorney's written recommendation. Thus, "actual release" on parole was an essential inducement that secured petitioner's agreement to the contract. Because petitioner was denied the benefit of this essential consideration, the court should grant rescission and or specific performance and order petitioner's release on parole.

## B.
### THE CONTRACT WAS AMBIGUOUS CONCERING A CRUCIAL ELEMENT; THEREFORE, IT MUST BE INTERPRETATED AS UNDERSTOOD BY THE DISTRICT ATTORNEY AND PETITIONER.

Under California law, a three-part analysis is required to interpret petitioner's contract: (1) A court must first look to the plain meaning of the agreement's language. *Cal. Civil Code* §§ 1638, 1644. (2) If the language in the contract is ambiguous, "it must be interpreted in the sense in which the promisor believed, at the time of making it, that the promisee understood it." *Cal. Civil Code* § 1649. (3) If after this second inquiry the ambiguity remains, "the language of a contract should be interpreted most strongly

1  against the party who caused the uncertainty to exist." Cal *Civil Code* § 1654; *see also*

2  *Toscano*, 124 Cal. App. 4th at 345.

3      The superior court found no ambiguities in petitioner's contract. (**Exhibit N**)

4  Paragraphs 6 of petitioner's contract, however, is ambiguous concerning time. It states,

5  "However, the ***actual release date*** will be determined by the Board of Prison Terms or

6  its equivalent agency." The phrase "actual release date" clearly suggests that

7  petitioner's release exactly on his minimum release date of 16 years 8 months was not

8  being guaranteed. Rather, the "actual" release date would be determined by the Board

9  or its equivalent agency. No time limit, however, is placed upon the Board or its

10  equivalent agency to make this determination. In light of the preceding language of

11  paragraph 6 stating that District Attorney John D. Phillips shall personally write a letter

12  to the Board of Prison Terms recommending that petitioner be released at the earliest

13  possible time upon having served the minimum sentence for first-degree murder, it is

14  unreasonable to conclude that the parties intended that the determination of petitioner's

15  actual release date would remain open-ended for perhaps decades after petitioner's

16  minimum eligible release date. If the parties actually intended that that there would be

17  no limit on ***when*** the Board could determine petitioner's release date, the District

18  Attorney's recommendation for petitioner's earliest possible release would have been a

19  meaningless phrase that would have served no purpose. If the parties intended or

20  understood that the Board would retain petitioner for decades beyond his minimum

21  eligible release date, the contract likely would have specified that petitioner's actual

22  term of incarceration could exceed his minimum term by any number of years, decades,

23  or indefinitely. Believing and intending, however, that petitioner would be found

24  suitable for parole at his first parole suitability hearing with the support of the District

25  Attorney's office, it was unnecessary for the parties to include any such clarification in

1 the contract concerning the actual amount of time in prison petitioner might serve. All

2 negotiating parties believed and intended petitioner would serve the minimum term or

3 a similar term as determined by the Board or its equivalent agency.

4     Because the contract is ambiguous concerning *when* the Board or its equivalent

5 agency must determine petitioner's actual release date, that term must be interpreted as

6 understood by the District Attorney and petitioner at the time the contract was entered.

7 *Moser, Toscano, supra.* The parties agreed and understood that petitioner would be

8 released after serving the minimum term consistent with the District Attorney's written

9 recommendation. Therefore, this expectation should now be enforced.

10

11                                         **C.**

      **THE DISTRICT ATTORNEY'S OFFICE BREACHED THE**

12     **PLEA BARGAIN.**

13     When the state enters a plea bargain with a criminal defendant, it receives

14 immediate and tangible benefits, such as promptly imposed punishment without

15 expenditure of prosecutorial resources.  (*Newton v. Rumery*, (1987) 480 U.S. 386, 394.)  In

16 pleading guilty, petitioner waived *inter alia*:  his privilege against self-incrimination; his

17 right to a jury trial; and his right to confront his accusers.   "A plea agreement is

18 interpreted according to the same rules as other contracts, the terms of the contract

19 become fixed at the time made and subsequent interpretations of that contract must be

20 based on an objective standard in which Petitioner's reasonable beliefs controls. (*People*

21 *v. Toscano*, (2004) 124 Cal.App.4th 340.)  An invalid or illusory concession offered by the

22 state constitutes a species of fraud. (*In re Ibarra*, (1983) 34 Cal.3d 277, 289.) The state thus

23 must "keep its word when it offers inducements in exchange for a plea of guilty."

24 (*People v. Macheno*, (1982) 32 Cal.3d 855, 860.)   The defendant must do so as well.

25 Consequently, after providing full cooperation to the District Attorney's office,

petitioner did not receive the substantive benefit of his contract and written plea agreement.

The Supreme Court has recognized that due process applies not only to the procedure of accepting the plea, but that the requirements of due process attach also to the implementation of the bargain itself. A plea agreement is a contract; the government is held to the literal terms of the agreement. (*See Buckley v. Johnson*, 187 F.3d 1129, 1134 (*citing United States v. Baker*, (9th Cir. 1994) 25 F.3d 1452, 1458) It follows, when the prosecutor breaches its promise with respect to an executed plea agreement, the defendant pleads guilty on a false premise. "When a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." (*Santobello v. New York*, (1971) 404 U.S. 257, 262, *supra*.)

According to the written contract and plea agreement, the District Attorney was to "recommend petitioner's release at the earliest possible time". (**Exhibit C.**) The District Attorney's representative, however, made adverse statements during petitioner's parole consideration hearing, in *violation* of the written plea agreement. (**Exhibit E, pgs. 92-97.**) The District Attorney's representative effectively retracted the prior written recommendation for early release through various adverse statements made during the hearing, effectively opposing petitioner's parole. Because the District Attorney's representative did not "recommend early release" before the Board of Parole Hearings, petitioner was denied the benefit of the bargain, a fair hearing and due process of law. *Buckley v. Terhune*, No. 03-55045 September 27, 2005—San Francisco, California Filed March 17, 2006 (9th Cir. 2006).

The plea agreement at issue specifically provided that the District Attorney's office would "recommend that petitioner be released at the earliest possible time". (**Exhibit C.**) Petitioner's plea was induced by a promise the District Attorney's

representative failed to fulfill. The District Attorney's representative made adverse statements during the hearing and closing arguments and breached the written contract and plea agreement. (**Exhibit E, Transcript pgs. 92-97.**) This attempt by the District Attorney's representative to influence the Board of Parole Hearings was conduct contrary to the written terms of the contract and plea agreement. Implicit in any plea bargain is that the state cannot with one hand give a benefit and with the other take it away. The District Attorney's representative was also bound to the terms of the contract. Mr. Blansett's claim, however, that the contract was not intended to have any binding effect on the Board is not supported by Mr. Phillip's letter. (**See also Exhibit E,** Transcript pg. 79; **"I've never seen a copy of John Phillips letter. He didn't give me a copy at the time he wrote it…John Phillips is no longer the DA, but the current DA gave authorization to attend."**.)

Clearly, the San Joaquin County District Attorney's office breached the written contract and plea agreement when Mr. Blansett claimed that the District Attorney's office was remaining *neutral* (contrary to the written recommendation), then when Mr. Blansett impeached petitioner's testimony, impliedly advocating *against* petitioner rather than recommending his early release as agreed in writing, and clarifying that the Board was *not bound* to honor petitioner's plea agreement for early release, even though Mr. Blansett played no part in plea negotiations and could not possibly represent Mr. Phillips intent concerning the plea agreement. (**Exhibit E, Transcript at 79.**)

Even if the breach were inadvertent it does not lessen its impact. (Santobello v. New York, 404 U.S. 257, 262.) Because petitioner has fully complied with his obligations under the contract and plea agreement to cooperate with the District Attorney's office, petitioner should now receive the benefit of the bargain that was promised to him by Mr. Hintz and impliedly recognized by Mr. Phillips. Because this essential

consideration failed, the court should grant specific performance or rescission and order petitioner's release from prison.

## D.
### THE STATEMENTS OF THE DISTRICT ATTORNEY'S REPRESENTATIVE VIOLATED THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING.

The adverse statements given by the District Attorney's representative were arguably not made in good faith and were unfair in light of the written contract and plea agreement. Because the comments of the District Attorney's representative did not provide support for petitioner's parole, the comments could have been made for only one purpose: to influence the Board of Parole Hearings to deny parole. This attempt by the District Attorney's representative to influence the Board of Prison Terms adversely was conduct specifically prohibited by the written plea agreement.

In common usage the term "good faith" is ordinarily used to describe a state of mind denoting honesty of purpose, freedom from intention to defraud, and being faithful to one's duty or obligation. (*Efron v. Kalmanovitz*, 249 Cal.App.2d 187; see also *Black's Law Dictionary*, 6th edition pg. 693.) All contracts include an implied covenant of good faith and fair dealing in performance and enforcement of contracts. '[I]n California, the law implies in **every** contract a covenant of good faith and fair dealing'"]; *Mitchell v. Exhibition Foods, Inc.*, (1986) 184 Cal.App.3d 1033, 1043; 229 Cal.Rptr. 535; *Spindle v. Travelers Ins. Companies*, (1977) 66 Cal.App.3d 951, 959; 136 Cal.Rptr. 404] ["the evolvement of the doctrine of implied covenant of good faith and fair dealing is an expression of **public policy** in our state"].) The covenant is also extra contractual; it "is implied as a supplement to the express contractual covenants...". (*Waller v. Truck Ins. Exchange, Inc.*, (1995) 11 Cal.4th 1, 36.) Conditions implied by law are conditions imposed by state law; they are not negotiated by the contracting parties.

Petitioner's written contract and plea agreement with the District Attorney's office is no exception to the public policy of this state that every contract contains an implied covenant of good faith and fair dealing. Under this implied covenant of good faith and fair dealing, petitioner reasonably could have expected that the District Attorney would have provided unconditional support at petitioner's first parole hearing, consistent with the District Attorney's promise to write a letter and recommend petitioner's release at the earliest possible time. Petitioner did not receive that support; instead, the District Attorney's office became an advocate against petitioner, impeached his testimony, suggested that the Board was not bound to honor petitioner's plea agreement and, therefore, the District Attorney's office violated the implied covenant of good faith and fair dealing.

The California Supreme Court has stated that, "a party violates the covenant if it subjectively lacks belief in the validity of its act or if its conduct is objectively unreasonable." (*Carma Dev., Inc. v. Marathon Dev.*, (1992) 2Cal.4th 342.) For the District Attorney's representative to make adverse statements rather than recommend release at the earliest possible time and then say "he wasn't going back on the deal" is unreasonable. (**Exhibit E, Transcript pg. 96.**) In light of the written contract and plea agreement, the conduct of District Attorney's representative was unreasonable and violated the implied covenant of good faith and fair dealing.

The primary contractual benefit petitioner expected in exchange for his cooperation was early release, based upon the representations by his attorney and Mr. John Phillips (*the* District Attorney) was that the District Attorney's support would carry enough weight with the parole Board to secure petitioner receiving "early release." In this effort, it would be essential to present a "united front" to the Board of Parole Hearings. The obvious goal of petitioner's plea agreement was to use the influence and prestige of the District Attorney's *personal recommendation* to secure

1  petitioner's early release on parole. Presenting this "united front" to obtain an actual

2  release date was essential. Anything less than full, unconditional support from the

3  District Attorney's office could be construed by the Board as opposition to parole. As

4  argued exhaustively, any position by the District Attorney's office other than full

5  support for petitioner's parole violated the contract. (See *U.S. v. Camarillo-Tello*, (9th cir.

6  2001) 236 F.3d 1024, 1028.)

7       The District Attorney's written recommendation for early release was undercut

8  both by its failure to support the recommendation presented at the hearing and by the

9  impeaching of petitioner's testimony, adverse statements, and assertions that the Board

10  was not bound to honor petitioner's plea agreement.

11

12                              **E.**
**PETITIONER'S DUE PROCESS RIGHTS WERE
VIOLATED WHEN THE PLEA AGREEMENT WAS
BREACHED.**

13

14       Section 3041 of the California Penal Code creates in every inmate a cognizable

15  liberty interest in parole, which is protected by the procedural safeguards of the Due

16  Process clauses. (*In re Rosenkrantz*, 29 Cal.4th 616, 655-658.) Due process is flexible and

17  calls for such procedural protections as the particular situation demands. (*Morrissey v.*

18  *Brewer*, 408 U.S. 471, 481.) Because the District Attorney was bound to the terms of the

19  contract and written plea agreement, it was improper for the Board, an extension of the

20  courts, to allow the adverse statements as well.  In addition, the Board of Parole

21  Hearings was likely prejudiced or unduly influenced against Petitioner resulting in his

22  denial of four years.  *Penal Code* Section 3046 subdivision (c) states that the Board must

23  consider the statements and recommendations submitted by officials. (**Exhibit F.**)

24       It is of no consequence that the Board may not have construed the District

25  Attorney's statements as comments against the recommendation of parole or that the

statements may have had no effect.  The harmless error rule does not apply when the

government breaches a plea agreement. (*In re Moser*, 6 Cal.4th 342 (1993) at 354, *citing, People v. Walker*, 54 Cal.3d 1013; 1 Cal.Rptr.2d 902 (1991). *U.S. v. Johnson*, 187 F.3d 1129, 1135.) The integrity of our judicial system requires that the government strictly comply with its obligations under a plea agreement. Accordingly, petitioner's right to due process was infringed when the District Attorney's representative breached the terms of the plea agreement. The court should rescind the contract or grant specific performance.

**F.**

**THE COURT SHOULD RESCIND THE CONTRACT AND PLEA AGREEMENT.**

Civil Code section 1689 provides:

(a)   A contract may be rescinded if all the parties thereto consent.(b) A party to a contract may rescind the contract in the following cases:

(1)   If the consent of the party rescinding, or of any party jointly contracting with him, was given by mistake, or obtained through duress, menace, fraud, or undue influence, exercised by or with the connivance of the party as to whom he rescinds, or of any other party to the contract jointly interested with such party.

(2)   If the consideration for the obligation of the rescinding party fails, in whole or in part, through the fault of the party as to whom he rescinds.

(3)   If the consideration for the obligation of the rescinding party becomes entirely void from any cause.

(4)   If the consideration for the obligation of the rescinding party, before it is rendered to him, fails in a material respect from any cause.

(5)    If the contract is unlawful for causes which do not appear in its terms or conditions, and the parties are not equally at fault.

(6)    If the public interest will be prejudiced by permitting the contract to stand.

(7)    Under the circumstances provided for in Sections 39, 1533, 1566, 1785, 1789, 1930 and 2314 of this code, Section 2470 of the Corporations Code, Sections 331, 338, 359, 447, 1904 and 2030 of the Insurance Code or any other statute providing for rescission.

"A factual mistake by one party to a contract, or unilateral mistake, affords a ground for rescission in some circumstances." *Donovan v. RRL Corp.*, (2001) 26 Cal.4th 261, 278, fn. Omitted. In *Donovan*, the California Supreme Court explained that California does not follow the "traditional rule" recited in the first Restatement of Contracts, section 503, to the effect that "unilateral mistake did not render a contract voidable unless the other party knew of or caused the mistake." (*Donovan, supra,* 26 Cal.4th at p. 280.) Instead, the *Donovan* court applied the more expansive rule of Section 153 of the Restatement Second of Contracts allowing rescission due to unilateral mistake where enforcement of the contract would be unconscionable. (*Donovan, supra,* at p. 281.) In instances in which the other party was unaware of and did not cause the mistake, the party claiming unilateral mistake must show that "(1) the . . . mistake [was one] regarding a basic assumption upon which the [party claiming mistake] made the contract; (2) the mistake has a material effect upon the agreed exchange of performances that is adverse to the [party claiming mistake]; (3) the [party claiming mistake] does not bear the risk of the mistake; and (4) the effect of the mistake is such that enforcement of the contract would be unconscionable." (*Donovan, supra,* at p. 282.) As to the third

factor, both the Restatement Second of Contracts and Civil Code section 1577[28] note

that the mistaken party's "neglect of legal duty" will bar relief; however, ordinary

negligence does not constitute such "neglect of legal duty" that will preclude rescission.

(*Donovan, supra,* at p. 283; *see also, M. F. Kemper Const. Co. v. City of L. A.,* (1951) 37 Cal.2d

696, 702.)

Applying the elements, (1) the . . . mistake [was one] regarding a basic

assumption upon which the [party claiming mistake] made the contract, i.e., petitioner

believed and  assumed that the District Attorney's personal recommendation would

result in petitioner serving only the minimum term and being released on parole after

his initial parole consideration hearing, rather than spending a lifetime in prison; (2) the

mistake [had] a material effect upon the agreed exchange of performances that is

adverse to the [party claiming mistake]. Because the District Attorney's

recommendation carried no weight with the Board, petitioner will likely have to serve

many more years in prison, perhaps decades, before he is released, if ever; (3) the [party

claiming mistake] does not bear the risk of the mistake; petitioner cannot reasonably

bear the risk that the advice of the District Attorney himself and his own attorney

would be wrong; as a layman, petitioner would have no basis on which to dispute the

representations and legal advice provided by the District Attorney and his own

attorney and (4) the effect of the mistake is such that enforcement of the contract would

be unconscionable; the District Attorney's personal recommendation has already been

demonstrated to have no weight. Petitioner was denied parole for four out of five

possible years, despite the District Attorney's letter recommending early release.

Therefore, it is obvious that enforcing the contract based on the mistaken assumption of

all parties that the District Attorney's recommendation would secure petitioner's early

release on parole will result in the exact consequences petitioner was attempting to avoid by agreeing to the contract in the first place—a life term in prison. At the very least, it can be shown that petitioner's stay in prison has been extended by at least four years more than the minimum term. This result is unconscionable in light of petitioner's extensive cooperation with the District Attorney's office in the two criminal prosecutions of Michael Blatt. Thus, petitioner has shown prejudice and an "unconscionable" result from enforcing the contract as is.

Moreover, the consideration for the contract failed as well. For petitioner, the actual benefit bargained for and assured was release after serving the minimum term. This failed to occur and petitioner has now served more than the minimum term. Therefore, under subsections (a)(2), (3), and (4), the consideration for which petitioner bargained failed, and the court should rescind the contract. There is no question that the beliefs of petitioner's Attorney and District Attorney John Phillips were mistaken in two fundamental respects: (1) the weight that the DA's letter would carry with the Board, and (2) the belief that petitioner would be released after having served the minimum term based upon the personal recommendation of the San Joaquin County District Attorney. The recommendations from the District Attorney's office or the actual District Attorney, however, are not binding on the Board of Parole Hearings and have only as much weight as the Board grants. In petitioner's case, the Board obviously accorded no weight to the District Attorney's recommendation. The Board denied parole for four years, one year short of the maximum denial period of five years, and failed to mention petitioner's contract with the District Attorney's office or his testimony when citing mitigating factors. Had petitioner been aware at the time he entered his plea that the District Attorney's personal recommendation would not be binding on the Board and would not have the weight represented by Mr. Phillips and Mr. Hintz, he would not have entered the contract and plea agreement. Furthermore, contract consideration failed when the District Attorney's representative violated the

1  written contract and plea agreement between the petitioner and the San Joaquin County

2  District Attorneys office. Accordingly, rescission based on breach contract (i.e., failure of

3  consideration) is appropriate.

4         Petitioner claims he was denied the primary benefit of his bargaining—actual

5  release. Although petitioner's contract and plea agreement do not expressly state that

6  petitioner would unconditionally be released after serving the minimum term,

7  petitioner has alleged that express and implied assurances were made to him that the

8  District Attorney's personal written recommendation would ensure that petitioner

9  would be granted parole and released from prison after serving the minimum term.

10 This was the "bait" used to secure petitioner's consent to the plea bargain and

11 cooperation in the prosecution of Michael Blatt. One might ask rhetorically, if petitioner

12 had not been assured that Mr. Phillips's letter would carry great weight with the Board

13 and secure his early release, what benefit would petitioner have received from a merely

14 advisory, nonbinding recommendation to the parole board?  Would petitioner have

15 waived his right to a jury trial and agreed to cooperate with the prosecution in the two

16 trials of Michael Blatt in exchange for a recommendation that had no binding legal

17 effect concerning petitioner's "early release" from prison? To believe this would require

18 one to believe that Mr. Mackey agreed to waive his rights and testify against a

19 codefendant with no real assurances that the District Attorney's "personal

20 recommendation" would be of any benefit or influence with the parole board. It is

21 simply inconceivable to think that under petitioner's written contract and plea

22 agreement there was not a clearly implied expectation that petitioner would actually be

23 released after serving the minimum term based on the weight of the District Attorney's

24 recommendation. Otherwise, there was no need to reduce this term to writing.

25 Accordingly, because petitioner has fully fulfilled his obligations under the plea

agreement, he is entitled to the promised benefit.

1

## VI.

## CONCLUSION

For all of the foregoing reasons, petitioner requests that the court grant the following relief and any additional relief the court deems appropriate:

(1)    Declare the rights of the parties;

(2)    Determine whether a breach of the contract and written plea agreement occurred;

(3)    Grant rescission of the contract under Civil Code Section 1689, or specific performance, ordering petitioner's immediate release from prison based on time served;

(4)    Subpoena Mr. John Phillips and Mr. Hamilton Hintz for an evidentiary hearing, if necessary;

(5)    Any other relief the Court deems just and proper

Respectfully submitted,

Dated: _4 – 24_, 2006    By: _____

Benjamin Ramos, Attorney for
Petitioner, James Mackey

## **LIST OF EXHIBITS**

Exhibit A          Probation Officer's Report dated November 2, 1990.

Exhibit B          Information #45624 filed on October 16, 1989.

Exhibit C          Contract and Terms of the Contract between Petitioner and District

                   Attorney John Phillips dated August 30, 1989.

Exhibit D          Letter dated November 20, 1990, from District Attorney John

                   Phillips to the Department of Corrections.

Exhibit E          Transcript dated May 6, 2005 the Initial Parole Consideration

                   Hearing of Petitioner, James Mackey.

Exhibit F          California Penal Code §3046

Exhibit G          Petitioner James Mackey's Psychiatric Reports.

Exhibit H          Petitioner James Mackey's Post –Conviction Progress Reports and

                   Lifer Prisoner Evaluation.

Exhibit I          Petitioner James Mackey's Laudatory Chronos.

Exhibit J          Petitioner James Mackey's Support Letters.

Exhibit K          Abstract of Judgment.

Exhibit L          Statement for Prison Officials dated February 22, 1991.

Exhibit M          Petitioner James Mackey's Vocational, Educational and Self-Help

                   Program Certificates.

Exhibit N          San Joaquin Superior Court Order Denying Habeas Corpus Petition

                   March 8, 2006

## ATTACHMENT TO FEDERAL HABEAS CORPUS PETITION OF

## JAMES MACKEY

### I. AEDPA STANDARDS

Under AEDPA, a court may grant the petition only if the state court's denial of relief:

> (1) resulted in a decision that was either "contrary to," or was an "unreasonable application" of, "clearly established federal law" as set forth by the United States Supreme Court; or

> (2) was based on an "unreasonable determination" of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Because the California Supreme Court summarily dismissed petitioner's habeas petition, the federal district courts "look through" that dismissal and review the "last reasoned" state court decision. *Bailey v. Rae,* 339 F.3d 1107, 1112 (9th Cir. 2003) (citation omitted). The last reasoned decision in this case is from the San Joaquin County Superior Court, dated March 6, 2006, denying petitioner's habeas corpus petition.

The "contrary to" and "unreasonable application of" clauses of § 2254(d) (1) provide independent avenues of relief. *Clark,* 331 F.3d at 1067. The "contrary to" clause of § 2254(d) (1) provides relief if the state court "fail[ed] to apply the correct controlling authority, or if it applie[d] the controlling authority to a case involving facts materially indistinguishable from those in a controlling case, but nonetheless reache[d] a different result." *Id.* (citation omitted). Under the "unreasonable application" clause of § 2254(d) (1), relief may be granted if the state court "identifie[d] the correct governing legal principle but unreasonably applie[d] that principle to the facts ..." *Id.* (citation and

alteration omitted).

Even if the state court's decision was contrary to, or an unreasonable application of, clearly established federal law, habeas relief may still be denied absent a showing of prejudice. *See, Early v. Packer,* 537 U.S. 3, 10-11, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002) (per curiam).

The starting point for review under AEDPA was stated succinctly by the 9th Circuit in *Inthavong v. Lamarque*, 420 F.3d 1055 (9th Cir. 2005):

> To grant relief where a state court has determined that a constitutional error was harmless, we must both determine (1) that the state court's decision was "contrary to" or an "unreasonable application" of Supreme Court harmless error precedent, and (2) that the petitioner suffered prejudice under *Brecht* from the constitutional error.
>
> In following this two-part harmless error test, we are joined by the Tenth, the Seventh, and the Fourth Circuits. The Tenth Circuit has instructed that "if the district court concludes the [state] court's application of *Chapman* was objectively unreasonable, the court should engage in an independent harmless error analysis applying the standard articulated in *Brecht.' Saiz v. Burnett,* 296 F.3d 1008, 1012-13 (10th Cir. 2002) (internal citation omitted); *see also Cargle* v. *Mullin,* 317 F.3d 1196, 1220, 1224 (10th Cir. 2003) ("If the state courts did not address a harmless-error issue *(or did so under the wrong standard),* we apply the standard generally adopted for habeas purposes in *Brecht v. Abrahamson."* (internal citation omitted) (emphasis added)).

Additionally,

> [I]f a federal court applies a harmless error analysis in the first instance, the *Brecht* standard governs. *See Bains v. Cambra,* 204 F.3d 964, 977 (9th Cir. 2000) (applying *Brecht* when the state court decided the case under the wrong harmless error standard or failed to apply a harmless error analysis entirely).

Because the state court in this case conducted a harmless error analysis, we are guided by the approach endorsed by the Supreme Court in *Esparza,* first deciding whether the state court's harmless error analysis is objectively unreasonable and, if so, applying *Brecht.*

Therefore, pursuant to *Mitchell v. Esparza,*...we hold that if a state court disposes of a constitutional error as harmless under an appropriate standard of review, federal courts must, for the purpose of the "unreasonable application" clause of § 2254(d)(1), first determine whether the state court's harmless error analysis was objectively unreasonable. Only if there is a predicate finding that the state court's harmless error analysis was objectively unreasonable, and thus an unreasonable application of clearly established federal law, should federal courts engage in a *Brecht* analysis.

*Medina v. Hornung*, 372 F.3d 1120 (th Cir. 2004) at 1126.

## II. ANALYSIS

### A.    THE SUPERIOR COURT'S ORDER WAS OBJECTIVELY UNREASONABLE.

The superior court failed to analyze petitioner's claims under federal law. Instead, the superior court essentially held that any error was harmless or that no breach of contract occurred. But the harmless error rule does not apply when the government breaches a plea agreement. (*In re Moser,* 6 Cal.4th 342 (1993) at 354, citing, *People v. Walker,* 54 Cal.3d 1013; 1 Cal.Rptr.2d 902 (1991). *U.S. v. Johnson,* 187 F.3d 1129, 1135.)

The California Supreme Court follows precedent set by the U.S. Supreme Court in *Santobello v. New York,* 404 U.S. 257 (1971) regarding plea agreements. The California Supreme Court observed:

> In vacating the judgment rendered by the trial court, the Supreme Court held in *Santobello* that the plea-negotiating process "must be attended by safeguards to insure the defendant what is reasonably due in the circumstances. Those circumstances will vary, but a constant factor is that when a plea rests in any significant degree *on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled.* [¶] On this record, *petitioner 'bargained' and negotiated for a particular plea in order to secure dismissal of more serious charges, but also on condition that no sentence recommendation would be made by the prosecutor.* It is now conceded that the promise to abstain from a recommendation was made, and at this stage the prosecution is not in a good position to argue that its inadvertent breach of agreement is immaterial.... That the breach of agreement was inadvertent does not lessen its impact." (*Santobello v. New York*, *supra*, 404 U.S. at p. 262 [30 L.Ed.2d at p. 433], italics added.)

*In re Moser*, 6 Cal.4th 342 (1993) at 355.

The U.S. Supreme Court additionally held in *Santobello* that a criminal defendant has a due process right to enforce the terms of his plea agreement. *See also Brown v. Poole*, 337 F.3d 1155, 1159 (9th Cir. 2003) ("[The defendant's] due process rights conferred by the federal constitution allow [him] to enforce the terms of the plea agreement."). The construction and interpretation of state court plea agreements "and the concomitant obligations flowing therefrom are, within broad bounds of reasonableness, matters of state law." *Ricketts v. Adamson*, 483 U.S. 1, 6 n.3 (1987). In California, "[a] negotiated plea agreement is a form of contract, and it is interpreted according to general contract principles," *People v. Shelton*, 37 Cal. 4th 759, 767 (2006), and "according to the same rules as other contracts," *People v. Toscano*, 124 Cal. App. 4th 340, 344 (2004) (cited with approval in *Shelton* along with other California cases to same effect dating

back to 1982). Thus, under *Adamson*, California courts are required to construe and interpret plea agreements in accordance with state contract law. The superior court failed to analyze petitioner's contract under California law and, therefore, its order was objectively unreasonable.

In California, "[a]ll contracts, whether public or private, are to be interpreted by the same rules . . . ." Cal. *Civil Code* §1635; *see also Shelton*, 37 Cal. 4th at 766-67; *Toscano*, 124 Cal. App. 4th at 344. A court must first look to the plain meaning of the agreement's language. Cal. *Civil Code* §§ 1638, 1644. If the language in the contract is ambiguous, "it must be interpreted in the sense in which the promisor believed, at the time of making it, that the promisee understood it." Cal. *Civil Code* § 1649. The inquiry considers not the subjective belief of the promisor but, rather, the "objectively reasonable" expectation of the promisee. *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1265 (1992); *Badie v. Bank of Am.*, 67 Cal. App. 4th 779, 802 n.9 (1998) ("Although the intent of the parties determines the meaning of the contract, the relevant intent is objective—that is, the objective intent as evidenced by the words of the instrument, not a party's subjective intent." (internal quotation marks and citation omitted)). Courts look to the "objective manifestations of the parties' intent . . . ." *Shelton*, 37 Cal. 4th at 767. If after this second inquiry the ambiguity remains, "the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist." Cal *Civil Code* § 1654; *see also Toscano*, 124 Cal. App. 4th at 345 ("ambiguities [in a plea agreement] are construed in favor of the defendant"). (2000). However, broken plea agreements do not require a showing of preudice:

> [I]n the context of a **broken plea agreement**, there
> is more at stake than the liberty of the defendant or

the length of his term. "At stake is the honor of the
government[,] public confidence in the fair
administration of justice, and the efficient
administration of justice ...." ' [Citations.]"

*In re Moser*, 6 Cal.4th 342 (1993) at 354, *citing, People v. Walker*, 54 Cal.3d

1013; 1 Cal.Rptr.2d 902 (1991). (emphasis added).

Under California law, a three-part analysis is required to interpret petitioner's

contract: (1) A court must first look to the plain meaning of the agreement's language.

*Cal. Civil Code* §§ 1638, 1644. (2) If the language in the contract is ambiguous, "it must

be interpreted in the sense in which the promisor believed, at the time of making it, that

the promisee understood it." Cal. *Civil Code* § 1649. (3) If after this second inquiry the

ambiguity remains, "the language of a contract should be interpreted most strongly

against the party who caused the uncertainty to exist." Cal *Civil Code* § 1654; *see also*

*Toscano*, 124 Cal. App. 4th at 345.

The superior court found no ambiguities in petitioner's contract. (**Exhibit N**)

Paragraph 6 of petitioner's contract, however, is ambiguous concerning time. It states,

"However, the ***actual release date*** will be determined by the Board of Prison Terms or its

equivalent agency." The phrase "actual release date" clearly suggests that petitioner's

release exactly on his minimum release date of 16 years 8 months was not being

guaranteed. Rather, the "actual" release date would be determined by the Board or its

equivalent agency. No time limit, however, is placed upon the Board or its equivalent

agency to make this determination. In light of the preceding language of paragraph 6

stating that District Attorney John D. Phillips shall personally write a letter to the Board

of Prison Terms recommending that petitioner be released at the earliest possible time

upon having served the minimum sentence for first-degree murder, it is unreasonable to

conclude that the parties intended that the determination of petitioner's actual release date would remain open-ended for perhaps decades after petitioner's minimum eligible release date. If the parties actually intended that that there would be no limit on *when* the Board could determine petitioner's release date, the District Attorney's recommendation for petitioner's earliest possible release would have been a meaningless phrase that would have served no purpose.  If the parties intended or understood that the Board would retain petitioner for decades beyond his minimum eligible release date, the contract likely would have specified that petitioner's actual term of incarceration could exceed his minimum term by any number of years, decades, or indefinitely. Believing and intending, however, that petitioner would be found suitable for parole at his first parole suitability hearing with the support of the District Attorney's office, it was unnecessary for the parties to include any such clarification in the contract concerning the actual amount of time in prison petitioner might serve. All negotiating parties believed and intended petitioner would serve the minimum term or a similar term as determined by the Board or its equivalent agency.

Because the contract is ambiguous concerning *when* the Board or its equivalent agency must determine petitioner's actual release date, that term must be interpreted as understood by the District Attorney and petitioner at the time the contract was entered. *Moser*, *Toscano*, *supra*. The parties agreed and understood that petitioner would be released after serving the minimum term consistent with the District Attorney's written recommendation. Therefore, because the superior court failed to engage in this analysis concerning the contract ambiguity relative to time, the superior court's order was objectively unreasonable.

**B**      **THE SUPERIOR COURT'S ORDER WAS "CONTRARY TO"**

**FEDERAL LAW.**

The "contrary to" clause of § 2254(d) (1) provides relief if the state

court "fail[ed] to apply the correct controlling authority, or if it applie[d]

the controlling authority to a case involving facts materially

indistinguishable from those in a controlling case, but nonetheless

reache[d] a different result." *Id.* (citation omitted). Here the superior court

failed to apply *Santobello v. New York*, 404 U.S. 257 (1971), as required

by California law.  In re *Moser*, 6 Cal.4th 342 (1993) at 355. Having failed

to apply the correct law, the superior court's order was "contrary to"

federal law.


For all the foregoing reasons, petitioner requests that the petition be granted.


Dated: 1/11 , 2007            By: _____

                                     Benjamin Ramos, Attorney for

                                     Petitioner, James Mackey